LEONARD K. STORRS, Trustee, *vs.* MARY M. BURGESS *et al.*

JULY 3, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, and Parkhurst, JJ.

(1) *Wills. Vested and Contingent Remainder. Classes of Devisees.*

1. Testamentary devise in trust of whole income to wife, until daughter attained age of twenty-five; if daughter deceased before that age, unmarried, whole income to wife for life.
2. When daughter attained age of twenty-five, one-half income to her.
3. Should wife die before daughter attained age of twenty-five, whole income in trust for daughter until she attained that age; then to be transferred to her, and trust to cease.
4. Should daughter marry and decease before age of twenty-five, leaving issue at her death, half of estate to become vested in issue, if wife still living; and if not, whole estate to issue.
5. Should daughter, married or unmarried, attain age of twenty-five, half income to her and half to mother till death of either; and then should my daughter survive her mother the whole estate to vest in her and the trust to cease.

"Should my wife survive our daughter, she dying without issue, the 'whole income to be paid to my wife during her lifetime, and at her death the estate to be divided into two equal parts; one of which shall be transferred to such charitable or religious purposes as she may direct, and the other half to be divided equally amongst the grandchildren of my deceased father."

The daughter of testator died under twenty-five years of age, intestate, and without issue, leaving her mother surviving. Upon the question as of what

time the class who took under the description "grandchildren of my deceased father" was to be ascertained—at the death of testator, at the death of his daughter, or at the death of his widow:—

*Held*, that the daughter took a vested equitable remainder in fee, subject to be divested by her death, under the age of twenty-five or before her mother; the words "should my daughter survive her mother the whole estate to vest in her and the trust to cease" being construed to mean, vest in possession.

*Held*, further, that the gift to the grandchildren, being of an interest limited to commence after the expiration of a fee, was an executory devise at death of testator, and continued so until the death of the daughter, and as such was not a transmissible or vested interest.

*Held*, further, that, upon the death of the daughter, the devise to the class became absolute, and gave them an equitable remainder in fee in half the real estate expectant upon the equitable life estate of the widow.

*Held*, further, that, upon the death of the daughter, the equitable remainder in one-half the trust estate, subject to the equitable life interest of the wife, vested in the grandchildren then living.

BILL IN EQUITY, for construction of will.

DOUGLAS, C. J. This is a bill in equity, brought by the trustee under the will of George Burgess, late of Gardner, Maine, to obtain a construction of certain provisions of said will affecting the disposition of certain real estate in the city of Providence, whereof said testator died seized. The bill was brought in the Superior Court, and, the case being ready for hearing for final decree, was certified to this court for determination under the provisions of section 338 of the Court and Practice Act.

The testator died April 27, 1866, leaving a will, duly probated, by which, after making a few small bequests, he gave all the residue of his estate, as follows:

"I give the residue of my estate, real and personal, in trust, to my said brothers, Frederick Burgess and Alexander Burgess, with authority to sell, change and reinvest the same at their discretion; and I hereby appoint that they shall hold the same in trust for my dear wife, and for my beloved daughter, Mary Georgiana Burgess, as follows:

"The whole income to be paid to my dear wife, if she should survive and remain unmarried, till my daughter shall attain the age of twenty-five; and should my daughter be removed

by death before that age and without being married; then the whole income to be paid to my dear wife throughout her own lifetime.

"When my daughter shall attain the age of twenty-five, the half of the income to be paid to her; and also to be held in trust for her and used for her benefit, should my dear wife at any time previous to her attainment of that age, be herself married a second time.

"Should my dear wife die before my daughter attains the age of twenty-five, the whole income to be held in trust for my daughter and used in her behalf, till she attains that age; and then, to be transferred to her with the whole estate, and the Trust to cease;

"Should my dear daughter be married and depart this life before the age of twenty-five leaving issue, then at her death the half of the estate hereby bequeathed to the said Trustees to become vested in such issue, if my dear wife should still be living; and if not, the whole to pass to such issue and the trust to cease;

"Should my dear daughter, married or unmarried, attain the age of twenty-five half the income to be paid to her, and half to her mother, till the death of the one or the other; and then, and thereupon.

"Should my daughter survive her mother, the whole estate to vest in her, and the Trust to cease; and

"*Should my dear wife survive our daughter, she dying without issue, the whole income to be paid to my dear wife during her lifetime, and at her death the estate to be divided into two equal parts; one of which shall be transferred to such charitable or religious purposes as she may direct,* or, if she make no direction, then to the Trustees aforesaid of the Fund for the support of the Episcopate of the Diocese of Maine, to constitute a fund for the assistance of missionaries and other clergymen of the said diocese, and to be applied under the direction of the Bishop and Standing Committee, especially for the relief of sick, infirm or aged clergymen in the said State, without regard to any division of the Diocese; *and the other half to be divided equally amongst the grandchildren of my deceased father;*

"Should my dear wife survive our daughter, she leaving issue, then at the death of my wife, the remaining half of the estate to pass to such issue and the Trust to cease."

The daughter of the testator, Mary Georgiana Burgess, died under the age of twenty-five, intestate and without issue, on May 1, 1873, leaving her mother, Sophia Kip Burgess, surviving her. The latter died July 7, 1904. The only question is as to the construction of the clause of the residuary devise, *supra*, which we have italicized.

At the death of the testator, on April 27, 1866, there were fifteen living grandchildren of the testator's deceased father.

At the death of the testator's daughter, Mary Georgiana Burgess, on May 1, 1873, two of these grandchildren, namely, said Mary Georgiana Burgess and Anna Burgess Kingsbury, had died, and another granddaughter, Christiana M. Burgess, had been born, leaving the grandchildren at that time fourteen in number.

At the death of the testator's widow, Mary Kip Burgess, on July 7, 1904, six more of the grandchildren had deceased, leaving them eight in number.

The widow died intestate, and by her will appointed the Trustees of the Diocesan Fund in the Diocese of Maine, a corporation established under the laws of Maine, as the beneficiary under the will of her husband of the half of the trust estate left to her direction, and directed that said half of the trust fund should be transferred and paid over to it for the purposes of the Burgess-Neely Endowment Memorial Fund.

It is conceded by all the parties in interest that this appointment was valid and effectual, and that the half of said fund is to be paid and transferred to said corporation accordingly.

The contest in this case is between the representatives of certain grandchildren who had deceased prior to July 7, 1904, on the one part, and the grandchildren who were living at the death of the testator's widow, July 7, 1904.

(1)     The question presented is: as of what time is the class who take under the description "grandchildren of my deceased father" to be ascertained—at the death of the testator, at the death of his daughter or at the death of his widow?

Counsel for the eight grandchildren surviving at the death of the testator's widow contends that the devise vested in these grandchildren only, and cites the decision of the Supreme Judicial Court of Maine, which has so held with respect to the personal estate. The decision was not accompanied with an opinion, and therefore gives us little assistance. We make no question that it was a correct application of the law relating to personal property, but it is not necessarily a precedent for dealing with the real estate.

The word vested, as applied to real estate, implies a present interest in the land. Hawkins on Wills, 221 *et seq.*, approved by Prof. Gray, The Rule Against Perpetuities, 76, § 100, 101, where it is said: "Since contingent remainders have been recognized, the line between them and vested remainders is drawn as follows: A remainder is vested in A. when, throughout its continuance, A., or A. and his heirs, have the right to the immediate possession, whenever and however the preceding estates may determine," citing *Johnson* v. *Edmond*, 65 Conn. 492, 499; *Starnes* v. *Hill*, 112 N. C. 1, 9.

The uncertainty which makes a gift contingent may be in the capacity of the devisee to take, or in the happening of an event upon which the gift is conditional. Uncertainty in the happening of the event which makes the gift absolute determines the application of the rule against perpetuities. In this case the uncertainty was one which must be resolved at or before the expiration of a life in being, and hence the vesting in this sense was not too remote. Where there is no uncertainty in the capacity of the devisee to take, though the devise may be in the first sense contingent, it is "transmissible," and in this sense is called "vested." Whether the gift in the present case is vested in this sense is the question before us. It is obviously contingent in the first sense.

Under the provisions of this will it was possible for the equitable fee of the residue to vest in possession ultimately either (1st) in the daughter, (2nd) in her issue, or (3rd) one-half in the nominee of the mother, or the charity named by the testator and one-half in the grandchildren of the testator's father.

At the death of the testator the daughter had no issue, so that the gift to issue was an executory devise and never vested in either sense, because no issue ever came into being. If issue had been born after the death of the testator, they would have taken contingent remainders during their mother's life. *Alverson* v. *Randall*, 13 R. I. 71. The daughter and the class of grandchildren were in being and competent to take, if the event upon which the gift was conditional should be decided one way or the other. The case has been argued as if the gifts to the daughter and to the grandchildren were alternative contingent remainders expectant upon the life estate of the mother; but while the literal effect of the testator's words is so, the legal effect seems to us to be different. A fee is given to the daughter if she shall attain the age of twenty-five and survive her mother. The rule laid down in Hawkins on Wills, 240, is, "If real estate be devised to A. 'if,' or 'when,' he shall attain a given age, with a limitation over in the event of his dying under that age, the attainment of the given age is held to be a condition subsequent and not precedent, and A. takes an immediate vested estate, subject to be divested upon his death under the specified age. (*Edwards* v. *Hammond*, 1 B. & P. N. R. 324, n; *Bromfield* v. *Crowder*, 1 B. & P. N. R. 313; *Doe d. Roake* v. *Randoll*, 5 Dow, 202; *Phipps* v. *Ackers*, 9 Cl. & F. 583.)

"And if the devise be to A. if or when he shall attain a given age, with a limitation over upon his death under that age *without issue*, A. takes a vested estate, defeasible only in the event of his death without issue under the specified age. (*Phipps* v. *Ackers*, 9 Cl. & F. 583.)"

In *Weston* v. *Weston*, 125 Mass. 268, the rule was applied to a gift to which the condition was annexed that the donee should survive another person.

In *Kelso* v. *Cuming*, 1 N. Y. Surr. R. 392, real estate was devised to C. after a life estate, "if he should live until he is twenty-one or marry. In case of his death under twenty-one, unmarried, then to V." C. died under twenty-one, and unmarried. Held, that the fee had vested in C. and was not

contingent upon the arrival at the age of twenty-one or his marriage.

We think the rule applies to the gift to the daughter in the present case, and that she took a vested equitable remainder in fee subject to be divested by her death, under the age of twenty-five or before her mother, the words of the testator "should my daughter survive her mother, the whole estate to vest in her and the trust to cease," being construed to mean vest in possession. "Words expressive of future time are to be referred to the vesting in possession, if they reasonably can be, rather than to the vesting in right." *Kenyon, Petr.,* 17 R. I. 159. The gift to the grandchildren, then, being of an interest limited to commence after the expiration of a fee, was an executory devise at the death of the testator, and continued so until the death of the daughter. As such it was not a transmissible or vested interest. *De Wolf* v. *Middleton,* 18 R. I. 810, 813, 814; *Brown* v. *Williams,* 5 R. I. 309, 316. Then the devise to the class became absolute and gave them an equitable remainder in fee in half the real estate expectant upon the equitable life estate of the widow. Gray Perpet. § 114, n. 5; *Craig* v. *Stacey,* Ir. Term. Rep. 249.

We find nothing in the will to indicate any preference in the mind of the testator for either class of the grandchildren. His gift to them seems to be a last resort to keep the estate in the line of the descendants of his father, from whom it is implied that he received it. His first wish is that his daughter and her issue shall ultimately have the estate, but that suitable provision shall be made from the income for his widow as long as she lives. If his primary intention is frustrated he gives one-half the estate to charity and the other half to the grandchildren of his father. Doubtless he expected, as proved to be the case, that some of these numerous grandchildren would outlive the time when the estate would vest in possession in his daughter or forever pass from her and her issue, and, if so, his alternative desire would be accomplished. Further than that his mind does not seem to have gone.

Our conclusion is, therefore, that upon the death of Mary Georgiana Burgess, May 1, 1873, the equitable remainder in

one-half of said trust estate, subject to the equitable life interest of Sophia K. Burgess, vested in said fourteen grandchildren who were then living, and that the trustee should now be directed to transfer one-half of the real estate held in trust, including the rents thereof which have accumulated since the death of said Sophia K. Burgess, to the Trustees of the Diocesan Fund in the Diocese of Maine; and one-half of said real estate, with the accumulated rents thereof, to such of the said fourteen grandchildren as are now living *per capita* and to the legal representatives of such of said fourteen grandchildren as have deceased *per stirpes.*

*Dexter B. Potter and Aaron H. Latham,* for complainant.

*Green, Hinckley & Allen, H. Charles Royce, and John F. A. Merrill,* for various respondents.