WILLIAM W. CRAPO & another, trustees, *vs.* CHARLES R. PRICE, executor, & others.

Bristol.    October 24, 1905. — February 27, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Devise and Legacy*, Construction.

A testatrix bequeathed to trustees a sum of money in trust, directing them to invest it and pay to K. the income therefrom during her life, "and after her decease to pay, distribute and divide the said principal fund, however the same may be then invested, to and among the children of said K. and the issue of any deceased child by right of representation." *Held*, that the gift in remainder was to those persons who at the time of the death of K. were her children and the issue of any deceased child by right of representation, and that a child of K. who, surviving the testatrix, died in the lifetime of K. leaving no issue had no interest which would pass to his or her legal representative.

BILL IN EQUITY, filed in the Probate Court for the county of Bristol on September 23, 1904, by the trustees under the will of Sylvia Ann Howland, late of New Bedford, for instructions.

The clause of the will to be interpreted is quoted in full in the first paragraph of the opinion.

The Probate Court made a decree "that the estate given by the sixth section of the will of Sylvia Ann Howland belongs only to those children of Keziah Price who were living at the decease of said Keziah Price, and Charles R. Price as executor of Abbie C. Bassett is not entitled to a share thereof." Charles R. Price, executor, appealed.

The case was heard by *Barker*, J., who ordered that the decree of the Probate Court be affirmed, and that the case be remanded to the Probate Court for further proceedings. Charles R. Price, executor, appealed.

The case was argued at the bar in October, 1905, before *Knowlton*, C. J., *Lathrop*, *Loring*, *Braley*, & *Sheldon*, JJ., and afterwards was submitted on briefs to all the justices.

*O. S. Cook*, (*A. E. Perry & M. R. Brownell* with him,) for Charles R. Price, executor.

*J. B. Sullivan, Jr.*, (*P. R. Blackmur* with him,) for Thomas and Orville Bassett.

SHELDON, J. The sixth clause of the will of Sylvia Ann Howland reads as follows: "I give and bequeath to the said Edward D. Mandell, George Howland, Jr., and William A. Gordon, trustees above named, the further sum of ten thousand dollars in trust; and I direct them to invest the same in their own name, and to pay to Keziah Price, daughter of the late Charles Russell, the income and net profits therefrom during her life, and after her decease to pay, distribute and divide the said principal fund, however the same may be then invested, to and among the children of said Keziah and the issue of any deceased child by right of representation, such issue taking the share which would have belonged to their deceased parent." Keziah Price was a close friend of the testatrix, but does not appear to have been in any way related to her. She and her four children survived the testatrix; but one of these children, Abbie C. Bassett, died before the death of her mother, Mrs. Price, leaving no issue. Mrs. Price has now died; and the petitioners, the present trustees under the will of Sylvia Ann Howland, have brought this bill to obtain instructions as to how the trust fund given by this clause is to be distributed.

The only question in dispute is whether Abbie C. Bassett had a vested interest in the remainder, which passed to the executor of her will, or whether her interest was contingent upon her surviving her mother; whether, that is, the limitation over after the death of Mrs. Price was to her children, with a provision that if any of those children should die during the continuance of the life estate leaving issue, the share of the one so dying should go to such issue, or whether it was to her children and the issue of any deceased child taken collectively. In other words, the question is whether the gift to the issue by right of representation of any deceased child of Mrs. Price is a substitutional or an original gift.

Certain general rules have been adopted for the construction of wills; and it is important that such rules, especially so far as they have become rules of property or have declared principles of substantive law, should not be lightly departed from. For example, a will is generally to be regarded as speaking from the time of the testator's death, and rights of devisees or legatees are to be taken to vest at that time, and estates given by will

are to be treated as vesting immediately upon the death of the testator, unless there is clearly manifested an intention to make them contingent upon a future event. *Bosworth* v. *Stockbridge*, 189 Mass. 266. So, too, it is a general rule that under a bequest to A. for life, with remainder to his children, each one of these children who is alive at the death of the testator takes then a vested interest in the remainder ; and this is none the less a vested interest that in order to carry out the manifest intention of the testator, the class will open to let in after born children, if there shall be any, up to the time appointed for the final distribution, although the shares of the children living at the death of the testator will thus be diminished in amount; so that the result will be that all children who are alive after the death of the testator take a share which they can dispose of, unless there is some provision for its being divested. *Ball* v. *Holland*, 189 Mass. 369. It is not necessary to multiply citations for the support of any of these propositions. Nor will the general rule of construction be altered though the gift over to the children of the tenant for life be accompanied by a provision that if any of the class thus constituted dies during the continuance of the life estate leaving issue, then the share of any one so dying is to go to his issue by right of representation ; for it is now settled by our decisions that in such a case the shares of the children would be vested on the death of the testator, though subject to be divested upon the contingency of their subsequent death leaving issue. *Blanchard* v. *Blanchard*, 1 Allen, 223. *Weston* v. *Weston*, 125 Mass. 268. *Dodd* v. *Winship*, 144 Mass. 461. *Lenz* v. *Prescott*, 144 Mass. 505, 514, 515. *Webster* v. *Ellsworth*, 147 Mass. 602, 604. If accordingly we had here a limitation to children with the provision that the share of children dying with issue should go to such issue, there would be no difficulty in saying that the shares of the children became vested at the death of the testatrix, and so that the share of Abbie C. Bassett must now be paid to the executor of her will.

But, as was said by Hammond, J., in *McCurdy* v. *McCallum*, 186 Mass. 464, 468, " While in the earlier cases there was a disposition to formulate general rules and to give to a particular word or phrase the same meaning in one will as in another, sometimes even at the risk of defeating the real intention of

the testator; the later cases, in trying to ascertain the true mean-
ing of a word or clause, are inclined to give more consideration
to the language of the whole will, and to the particular circum-
stances of each case. In England, as here, the cardinal rule in
the interpretation of wills, to which all other rules must bend,
is that the intention of the testator shall prevail, provided that
it is consistent with the rules of law." We think that this cor-
rectly states the present condition of our law. It is not that
there are no longer any rules of construction to be observed; it
is rather that these rules are to be followed so far as they aid in
determining the meaning of the testator, but when that meaning
is ascertained it is to be adopted; that the intention of the
testator is to be gathered from the will as a whole, and when
ascertained is to determine the construction which the court
will put upon his language. *Weston* v. *Weston,* 125 Mass. 268,
270. So in *Heard* v. *Read,* 169 Mass. 216, 223, Field, C. J., said:
" The present tendency in this country is against absolute rules
of construction, and in favor of a careful consideration of the
particular language of each will, as well as of its general scope
and purpose, in order to determine, in view of the circumstances
known to the testator when the will was made, his intention
as expressed in it." The same doctrine was repeated by this
court in considering another part of the will here in question.
*Crapo* v. *Pierce,* 187 Mass. 141. It often has been affirmed by
this court in dealing with questions as to vested or contingent
remainders, and in deciding whether beneficiaries were to be
determined as of the date of the testator's decease or as of a
subsequent period of distribution provided for by the will.
*Shattuck* v. *Stedman,* 2 Pick. 468, 469. *Olney* v. *Hull,* 21 Pick.
311, 313. *Sears* v. *Russell,* 8 Gray, 86, 94. *Denny* v. *Kettell,*
135 Mass. 138, 139, 140. *Peck* v. *Carlton,* 154 Mass. 231. Ac-
cordingly the question in this case is, taking the language of the
testatrix and using all the assistance that can be derived from
the general rules of construction, not to override her meaning
but to assist in discovering it: What was her real intention in
making the provision contained in this clause of her will?

It must be remembered that this limitation is not made to
children of the testatrix or to her relatives by blood or marriage;
and no help can be derived from the cases which have laid down

the rule that a remainder given to the testator's children is to be regarded as vested, even though the court might otherwise have treated it as contingent. Great weight was given to this consideration in *Gibbens* v. *Gibbens*, 140 Mass. 102, in which C. Allen, J., said, p. 104: "We are of opinion, on the whole, that the case falls within the general rule, that a vested remainder will be held to have been intended, in the case of a devise to the testator's children, unless there is something sufficient to show the contrary." To the same effect see *Stanwood* v. *Stanwood*, 179 Mass. 223, and *Bancroft* v. *Fitch*, 164 Mass. 401. We do not of course mean that this circumstance is of any affirmative weight to show that the remainder in question is contingent, but simply to say that there is an absence of one consideration which if present would have tended strongly to indicate that a vested remainder was created.

The difficulty in the case arises, however, from the language employed by the testatrix. The gift over is made by a direction to the trustees of the fund; and that direction is that after the decease of Keziah Price they are "to pay, distribute and divide the said principal fund, however the same may be then invested, to and among the children of the said Keziah and the issue of any deceased child by right of representation, such issue taking the share which would have belonged to their deceased parent." That is, if we follow the literal language of the will, the beneficiaries, the persons among whom the fund is finally to be divided, are her children and the issue of any deceased child; and then follows a provision that the amount to be taken by such issue is to be the amount which would have belonged to their deceased parent. By directing the final payment and division to be made among beneficiaries thus to be ascertained, the testatrix, according to the natural import of her words, has excluded those children who should die during the life estate without leaving issue. Plainly, some of these beneficiaries, the issue of deceased children, cannot be determined until the decease of the life tenant; and this affords a strong indication that all of the beneficiaries are to be then determined. It is only after the decease of Keziah Price that the trustees are directed to make the final payment and distribution; the thing to be divided is the trust fund as then existing, "however the

same may be then invested"; the payment and distribution are to be made " to and among the children of the said Keziah and the issue of any deceased child by right of representation." The fact that, as here, some of the legatees in remainder could not be ascertained until after the termination of the life estate, has been regarded as having a strong tendency to show that all the remaindermen must be ascertained at that time, and so that all the remainders were contingent. *Smith* v. *Rice,* 130 Mass. 441. *Denny* v. *Kettell,* 135 Mass. 138. *Harding* v. *Harding,* 174 Mass. 268.

Moreover it seems to us that the testatrix intended the whole fund to be divided among the beneficiaries whom she identifies by description, that is, among the persons who at the time of division answer to the description which she gives, who are then either children or the issue of deceased children of Mrs. Price. The children and issue of deceased children, though standing in different degrees of relationship to their ancestor, are described as forming one collective body, one class, as in *Bigelow* v. *Clap,* 166 Mass. 88; *Hill* v. *Bowers,* 120 Mass. 135; *Bassett* v. *Granger,* 100 Mass. 348; *Young's appeal,* 83 Penn. St. 59. Nor do we see how, without putting an undue strain upon the language of the testatrix, it can be said that the remainder after the life estate is not as much a direct gift to the issue of deceased children as it is to the children themselves; but if the children living at the death of the testatrix took then vested remainders, subject only to be divested in the case of those who should happen to die during the continuance of the life estate, leaving issue, the provision for the issue of deceased children must be treated as purely substitutional.

Another consideration is that there are in this limitation, as already noticed, no words of present gift to the children of the life tenant. The trustees are directed to pay to Keziah Price the income during her life, and after her decease to pay and divide the principal fund to and among her children and the issue of any deceased child. The employment of such language often has been held to indicate that the testator intended that the title should not vest until the period of distribution should arrive, that the bequest should be contingent until that time. *Eager* v. *Whitney,* 163 Mass. 463. *Hale* v. *Hobson,* 167 Mass. 397. *Peck*

v. *Carlton*, 154 Mass. 231. *Denny* v. *Kettell*, 135 Mass. 138. And although this may not be an absolute and decisive rule of construction, it generally has been regarded as of importance and as a weighty consideration in arriving at the meaning of a testator. See the cases collected in 30 Am. & Eng. Encyc. of Law, (2d ed.) 771. *Hale* v. *Hobson*, *ubi supra*, has indeed been somewhat limited by *Codman* v. *Brigham*, 187 Mass. 309 ; but we are not aware that its declaration of the principle here stated ever has been impugned.

By the true construction of this will, in view of all the circumstances, it is the opinion of a majority of the court that the parties entitled to take this gift in remainder are those who at the time of the death of Keziah Price were her children and the issue of any deceased child by right of representation, and that a child of hers who died in her lifetime leaving no issue, had no vested interest which would pass to the executor of his or her will.

Accordingly the decree appealed from must be affirmed.

*So ordered.*